## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 25 C 5739 |
| | ) | |
| METROPOLITAN NEWS COMPANY, | ) | |
| and DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Michael Mogan filed this action *pro se*, asserting claims for defamation *per se* and false light invasion of privacy against Defendant Metropolitan News Company ("MNC"), a California corporation, and Defendants Doe 1 through 20. Before the Court is MNC's motion to dismiss Mogan's complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). MNC argues, *inter alia*, that this Court lacks both general and specific personal jurisdiction over it. The Court agrees and grants MNC's motion for the reasons set forth below.

## <u>BACKGROUND</u>

The following facts come from the complaint and are presumed true for purposes of this motion. All reasonable inferences are drawn in Mogan's favor.

Mogan, an attorney domiciled in Chicago, Illinois, brings this action *pro se* against MNC, a California corporation with its principal place of business in Los Angeles, California, and unnamed Doe defendants.[1]  Mogan alleges that MNC published defamatory statements about him on its website, Metropolitan News-Online, on October 17, 2024 (the "Article").

According to the complaint, the published statements falsely asserted that: (1) Mogan lost an appeal in the Ninth Circuit on the same day his law license was suspended by the State Bar of California; (2) the Ninth Circuit affirmed an anti-SLAPP motion terminating an action filed by Mogan; (3) both the Ninth Circuit decision and the State Bar action arose from Mogan's representation of a client, Veronica McCluskey, in sixteen lawsuits related to her loss of "superhost" status on Airbnb; and (4) Mogan filed suit against four individuals for malicious prosecution and intentional infliction of emotional distress based on their motion for sanctions.  Dkt. # 1-1, ¶ 15; *see also* Dkt. # 11-1, at 5–6.

Mogan alleges that these statements are false and defamatory *per se*, as they impute a lack of integrity and competence in his profession as an attorney.  He further contends that the statements were published without privilege, with knowledge of their falsity, and with reckless disregard for the truth as well as common law malice.  Mogan

---

[1] The complaint references Defendant Does 1 through 20 and, without providing additional allegations, asserts that they acted as agents or employees of MNC.

asserts that he suffered reputational harm, emotional distress, humiliation, and embarrassment as a direct and proximate result of the publications.

The complaint asserts two causes of action: defamation *per se* (Count I) and false light invasion of privacy (Count II). Mogan seeks compensatory damages in the amount of $10 million, prejudgment interest, and punitive damages.

MNC timely removed the action based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. MNC now seeks to dismiss the complaint under Rules 12(b)(2) and 12(b)(6), arguing that the Court lacks personal jurisdiction over MNC and that the complaint fails to state a claim. The Court addresses only the arguments raised under Rule 12(b)(2).[2]

## LEGAL STANDARD

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2). When a defendant challenges personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Before conducting discovery, the Court must determine whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In evaluating this showing, the Court "accept[s] as

---

[2] Mogan asks the Court to take judicial notice of various court orders and pleadings—all of which were filed in federal and state courts in California. Because the Court does not reach MNC's Rule 12(b)(6) arguments, it finds Mogan's request for judicial notice—submitted in opposition to those arguments—to be unnecessary to the resolution of the motion and thus declines to rule on it. Therefore, Mogan's request for judicial notice (Dkt. # 14) is denied as moot.

true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in the plaintiff's favor." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). However, "where a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 702 F. Supp. 3d 692, 707 (N.D. Ill. 2023). "If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Id.* (internal quotations omitted).

This court sitting in diversity may exercise personal jurisdiction over a defendant only if: (1) Illinois's long-arm statute permits it, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *See Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023). Because Illinois's long-arm statute extends to the limits of the Due Process Clause of the Fourteenth Amendment, the Court's inquiry collapses into the single question of whether exercising jurisdiction comports with due process. *See Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015).

There are two types of personal jurisdiction: general (or all-purpose) jurisdiction and specific (or case-linked) jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For a corporation, general jurisdiction exists when its affiliations with the forum state are "so 'continuous and systematic' as to render it essentially at home there." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

4

316 (1945)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. Specific jurisdiction, by contrast, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Id.* at 919 (cleaned up).

## DISCUSSION

### I.    General Jurisdiction

Mogan requests jurisdictional discovery to establish that this Court may exercise general jurisdiction over MNC based on its "continuous and systematic contacts with Illinois." Dkt. # 13, at 7–8. The Court concludes that it lacks general jurisdiction over MNC and that Mogan has failed to make required prima facie showing to justify such discovery.[3]

The Supreme Court has significantly circumscribed the availability of general jurisdiction in recent years. In *Goodyear*, the Supreme Court held that general jurisdiction exists only where a corporation's affiliations with a state are so "continuous and systematic" as to render it "essentially at home" there—typically its place of incorporation and principal place of business. 564 U.S. at 919. In *Daimler AG v. Bauman,* 571 U.S. 117, 139 n.19 (2014), the Court clarified that general jurisdiction based on other contacts is appropriate "only in an exceptional case." The Seventh

---

[3] *See* Section III, *infra*, for the Court's discussion of Mogan's request for jurisdictional discovery.

Circuit has described these decisions as having "raised the bar" for general jurisdiction, requiring satisfaction of "stringent criteria." *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015).

It is undisputed that MNC is a California corporation with its principal place of business in Los Angeles, California. Dkt. # 1–1, ¶ 6; Dkt. # 11–1, ¶ 2. Under *Goodyear* and *Daimler*, MNC is therefore not subject to general jurisdiction in Illinois based on these paradigmatic contacts. The question, then, is whether Mogan has demonstrated that this case presents the "exceptional" circumstances warranting the exercise of general jurisdiction outside MNC's state of incorporation and principal place of business. *Daimler*, 571 U.S. at 139 n.19. He has not.

Mogan's primary theory appears to be that MNC's website, which Mogan characterizes as "interactive," subjects MNC to general jurisdiction in Illinois because the website "can be accessed from anywhere." Dkt. # 13, at 7. This argument is foreclosed by the Seventh Circuit, which held that "maintaining a public website is not sufficient, by itself, to establish general jurisdiction." *See Kipp*, 783 F.3d at 699; *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.").

Moreover, Mogan's characterization of MNC's website as "interactive" is not supported by the evidence. The web pages Mogan provides show that to purchase legal

notice services or subscriptions, users must mail a check or call to place a charge on a credit card. *See* Dkt. # 15-18; Dkt. # 15-19. This is far from the type of interactive e-commerce that might support personal jurisdiction. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549–50 (7th Cir. 2004) (describing a passive website as one that "merely makes available information about the company and its products"); *see also cf. Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (rejecting website-based jurisdiction even where the defendant operated an e-commerce site that directed sales into the forum state, as such contacts supported only specific, not general, jurisdiction).

Mogan next points to evidence regarding entities he identifies as "Legal Advertising Solutions" ("LAS"), "PubManager," "Legal Advertising Network," and "National Newspaper Network," suggesting these entities conduct business nationally and may have Illinois contacts. Dkt. # 13, at 7–8, 12–13. This evidence is insufficient for several reasons.

First, Mogan provides no competent evidence that these entities are related to MNC or that their contacts should be attributed to MNC for jurisdictional purposes. Mogan states that "Metnews has stated Lisa Grace Kellog is a shareholder of Defendant's corporation" and that she is president of LAS. Dkt. # 13, at 7. Even accepting this allegation as true, shareholder ownership does not automatically impute one entity's contacts to another for personal jurisdiction purposes. In *Daimler*, the Supreme Court explicitly rejected a similar argument and abolished the "agency test"

7

to establish general jurisdiction, emphasizing that a subsidiary's contacts cannot be automatically imputed to the parent. 571 U.S. at 135–36.[4]

Second, even if these entities' activities could be attributed to MNC, Mogan provides no evidence that they conduct business in Illinois specifically. Mogan relies on vague generalities: MNC's "customers could be in any state and Defendant could also be involved in publishing notices in various states." Dkt. # 13, at 13. Such speculation is insufficient to establish general jurisdiction.[5]

Third, and most fundamentally, even if Mogan could demonstrate that MNC or related entities have some customers in Illinois or conduct some business here, such contacts would not establish general jurisdiction under *Goodyear*. The Supreme Court expressly held that "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6.

---

[4] In *Daimler*, the Supreme Court left open the question of whether the contacts of a third party may be imputed to a defendant under an "alter ego" theory. *See Daimler*, 571 U.S. at 134; *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) ("[T]he [*Daimler*] Court left intact [the] alter ego test for 'imputed' general jurisdiction."). Federal courts in the Seventh Circuit "have found that whether an entity is an alter ego is pertinent but not determinative" and that "fact cannot alone confer personal jurisdiction." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 2019 WL 3302223, at *10 (N.D. Ill. 2019) (internal quotations omitted) (collecting cases). Even so, Plaintiff neither argues nor does his declaration support that MNC is so dominated by any of the listed entities as to be considered its alter ego. *See Daimler*, 571 U.S. at 134–35 ("[S]everal Courts of Appeals have held, that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego.").

[5] *See infra*, Section III.

The Court must assess whether MNC's contacts with Illinois are so "continuous and systematic" as to render MNC "essentially at home" in the state—meaning, whether Illinois is the functional equivalent of MNC's place of incorporation or principal place of business. *Daimler*, 571 U.S. at 133 n.11. Mogan's speculative allegations regarding potential customers or business activities fall far short of this demanding standard.

Mogan also references MNC's 2021 payroll of approximately $1 million, suggesting that it reflects substantial business operations. However, he provides no evidence linking this payroll to Illinois, and the record before the Court indicates that MNC's operations are centered in California. Dkt. # 11-1, ¶¶ 2–4. Furthermore, the size of a company's overall operations is not the relevant inquiry; the question is whether its contacts with the forum state are so substantial as to render it "essentially at home" there.

Finally, the evidence Mogan himself submits undermines his position. The website page listing MNC's publications identifies seven newspapers, all with California addresses and coverage areas. *See* Dkt. # 15-25. MNC's declaration states unequivocally that it "has no subscribers in Illinois and does no business in Illinois." Dkt. # 11-1, ¶ 4. Mogan has not refuted these facts with affirmative evidence, and the Court therefore accepts them as true. *See In re Hair Relaxer*, 702 F. Supp. 3d at 707.

In sum, Mogan has not demonstrated that MNC maintains the kind of "continuous and systematic" contacts with Illinois that would render it "essentially at home" in the state. *See Goodyear*, 564 U.S. at 919. MNC is a California corporation

with its principal place of business in California, and it publishes newspapers focused on California markets. Mogan has offered no competent evidence of Illinois-specific contacts beyond speculative assertions that MNC "could" have customers or conduct business in the state. This case does not present the "exceptional" circumstances contemplated in *Daimler*. Accordingly, the Court lacks general jurisdiction over MNC.

## II. Specific Jurisdiction

Mogan also argues that this Court may exercise specific jurisdiction over MNC based on the publication of the allegedly defamatory October 17, 2024 Article. The Court disagrees.

To establish specific jurisdiction, Mogan must demonstrate that: (1) the defendant purposefully availed itself of the privilege of conducting business in Illinois or purposefully directed its activities at Illinois; (2) the alleged injury arises out of the defendant's contacts with Illinois; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022); *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

The Supreme Court has emphasized that specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (cleaned up). The Court has further clarified that "[t]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the

necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. at 284 (emphasis original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

With respect to defamation cases specifically, the Supreme Court held in *Calder v. Jones*, 465 U.S. 783 (1984), that California could exercise jurisdiction over Florida defendants who wrote and edited an allegedly defamatory article about a California entertainer published in a national magazine. The Supreme Court explained that the defendants' conduct was "expressly aimed at California" because they "wrote and edited an article that they knew would have a potentially devastating impact upon" the plaintiff in California, where she lived and worked, and "the brunt of [the] injury . . . would be felt" there. *Id*. at 789–90. Critically, the article was "drawn from California sources" and concerned the plaintiff's "California activities," and the publication had its "largest circulation" in California. *Id*. at 788–89.

The Supreme Court has since clarified that *Calder* does not stand for the proposition that a defendant may be sued wherever a plaintiff suffers harm. In *Walden*, the Court emphasized that "a plaintiff's contacts with the defendant and the forum" are not sufficient; rather, the defendant must have purposefully directed his conduct at the forum state such that "the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 289–90. The Supreme Court distinguished *Calder* on

11

the ground that the defendants in that case engaged in conduct expressly aimed at California, including publishing an article that was "widely circulated" in California. *Id*. at 287. By contrast, in *Walden*, the defendant's conduct—seizing the plaintiff's cash in Georgia—had no connection to Nevada itself, even though the plaintiff resided in Nevada and felt the injury there. *Id*. at 289–90.

Mogan's primary argument is that MNC "expressly aimed their tortious conduct at Mogan and his Illinois-based business for the purpose of causing him injury there." Dkt. # 13 at 9–10. This argument is foreclosed by *Walden* and its progeny. The Supreme Court has made clear that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. The fact that Mogan resides in Illinois and operates a law practice here does not establish that MNC purposefully directed its conduct at Illinois. *Sheehan v. Breccia Unlimited Co.*, 48 F.4th 513, 523 (7th Cir. 2022) ("the defendants' minimum contacts must be with the forum itself and not merely with a person who resides there"); *see also Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (allegation that the defendant "set out to injure" the plaintiff knowing the plaintiff "is located in Illinois" is "exactly the sort of allegation the Justices deemed inadequate in *Walden*").

Mogan attempts to analogize this case to *Calder*, arguing that MNC expressly aimed the Article at Illinois because the headline identifies him by name and describes him as a Chicago attorney. But *Calder* is distinguishable in critical respects. In *Calder*, the allegedly defamatory article was "widely circulated" in California, the forum state,

12

and the publication had its "largest circulation" there. 465 U.S. at 788–89. Here, by contrast, MNC has no subscribers in Illinois, does not circulate its newspaper in the state, and the Article was not "widely circulated" or circulated at all in Illinois. *See* Dkt. # 11–1, ¶ 4; *Jackson v. Cal. Newspapers P'ship*, 406 F. Supp. 2d 893, 896 (N.D. Ill. 2005) (dismissing defamatory publication suit against California news organizations for lack of personal jurisdiction where publication had no Illinois internet subscribers and only a single Illinois subscriber of its print publication, even though article identified the plaintiff and was accessible online); *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) ("The exercise of personal jurisdiction based on the maintenance of a passive web-site is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular.").

Moreover, in *Calder*, the article was "drawn from California sources" and concerned the plaintiff's "California activities." 465 U.S. at 788–89. Here, the Article reports on California legal proceedings—a Ninth Circuit decision regarding sanctions imposed in California federal court, State Bar of California disciplinary proceedings, and California state court rulings. Dkt. # 11-1, at 5–6. The Article's focus is entirely on California legal matters and bears no connection to Illinois other than the fact that Mogan resides here.

The Supreme Court's decision in *Walden* reinforces that *Calder* does not support jurisdiction in this case. In *Walden*, the Court clarified that the *Calder* holding was based not simply on the fact that the plaintiff felt harm in California, but on the

13

defendants' conduct being "expressly aimed" at California and the article's wide circulation there. 571 U.S. at 288 n.8. Here, Mogan's contacts with Illinois—his residence and law practice—do not transform MNC's publication of a California-focused article into conduct "expressly aimed" at Illinois.

Mogan cites *Majumdar v. Fair*, 567 F. Supp. 3d 901 (N.D. Ill. 2021), for the proposition that naming someone in a publication and "tagging" them establishes personal jurisdiction in the person's state of residence. *Majumdar* is distinguishable. In that case, the defendant engaged in a sustained social media campaign directed at an Illinois institution—the University of Chicago. *Id*. at 904–07. The defendant repeatedly used the "tagging" feature on Facebook and Twitter to send direct notifications to the university's social media accounts, which the court analogized to "open letters to the University of Chicago" posted "on campus bulletin boards for all to see." *Id*. at 911. The defendant's conduct was thus expressly aimed at an Illinois audience and intended to influence the actions of an Illinois institution.

By contrast, MNC's Article was published in a California newspaper with no Illinois subscribers, reported exclusively on California legal proceedings, and was not directed at any Illinois audience or institution. The mere fact that Mogan is named in the headline and identified as a "Chicago attorney" does not amount to "tagging" in the social media sense contemplated in *Majumdar*, nor does it establish that the Article was "expressly aimed" at Illinois.

14

Mogan also contends that this Court should apply the "sliding scale" test from *Zippo Manufacturing Co. v. Zippo Dot Com. Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), and find that MNC's website is sufficiently "interactive" to support personal jurisdiction. This argument is unavailing. The Seventh Circuit has explicitly rejected the *Zippo* test. *Hemi Grp. LLC*, 622 F.3d at 758. It has further held that relying on a defendant's website as the basis for personal jurisdiction "would violate the principles on which *Walden* and *Daimler* rest." *Advanced Tactical*, 751 F.3d at 803. Accordingly, Mogan's argument based on *Zippo* is without merit. Furthermore, the record does not support Mogan's characterization of MNC's website as "interactive" as explained *supra*.

Mogan speculates that "[d]iscovery will show how many subscribers received the 2024 article via email." Dkt. # 13, at 10. However, he offers no evidence that MNC emails any articles to subscribers in Illinois, and MNC's unrebutted declaration affirmatively states that it has no subscribers in Illinois.

Finally, Mogan argues that the Article cited an Illinois bankruptcy proceeding, suggesting this constitutes purposeful direction at Illinois. The Court reviewed the Article and finds that its reference to bankruptcy proceedings is a quotation from Mogan's own filing in California's State Bar Court. Dkt. # 11-1, at 5–6. Quoting a litigant's reference to his own Illinois bankruptcy case, in the course of reporting on California disciplinary proceedings, without more, does not constitute conduct purposefully directed at Illinois.

In sum, Mogan has not demonstrated that MNC purposefully directed its conduct at Illinois.  MNC is a California-based newspaper that published an article focused entirely on California legal proceedings.  The Article was not circulated in Illinois, was not targeted toward an Illinois audience, and did not concern any Illinois-specific activities.  The mere fact that Mogan resides in Illinois and is identified in the headline as a "Chicago attorney" is insufficient to satisfy the purposeful direction requirement for specific jurisdiction.

Even if MNC had purposefully directed its conduct at Illinois—which the record does not support—Mogan's claims do not "arise out of" MNC's contacts with the state. The "arising out of" requirement asks whether there is an "'affiliation between the forum and the underlying controversy.'" *Ford Motor Co. v. Mon. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 370 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).  The relevant inquiry is whether "the defendant's suit-related conduct . . . create[d] a substantial connection with the forum State." *Walden*, 571 U.S. at 284.

MNC has no connection to Illinois, nor do the Article's allegedly defamatory statements bear any relation to the state.  Mogan's claims arise from a publication concerning California legal proceedings, not from any Illinois-related conduct by MNC. The fact that Mogan resides in Illinois and feels the injury here does not satisfy the "arising out of" requirement.  *See Walden*, 571 U.S. at 284; *see also Bristol-Myers Squibb*, 582 U.S. at 264 (holding that the plaintiffs' claims did not arise out of the

defendant's California contacts where claims concerned conduct that occurred outside California).  Accordingly, Mogan has not satisfied the second prong of the specific jurisdiction analysis.

Because Mogan has failed to satisfy the first two prongs of the specific jurisdiction analysis, the Court need not address the third.  *See Sheehan*, 48 F.4th at 526.

### III.  Jurisdictional Discovery

Mogan requests jurisdictional discovery to establish general jurisdiction and to uncover additional evidence supporting specific jurisdiction.  The Court denies that request.

In the Seventh Circuit, "the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).  Speculative allegations are insufficient to warrant jurisdictional discovery. *Sheehan*, 48 F.4th at 527.  "In other words, the plaintiff must advance proof to a reasonable probability of the facts necessary to establish personal jurisdiction." *Marks v. Worldwide Robotic Automated Parking, LLC*, 2017 WL 2985757, at *3 (N.D. Ill. 2017) (internal quotations omitted).

Mogan has not made the required showing to warrant jurisdictional discovery.  As an initial matter, he has not filed a formal motion or submitted proposed discovery requests.  Instead, he merely states that if the Court finds jurisdiction to be a "close call," he "respectfully requests leave to serve written discovery requests" and "take

17

Defendant's jurisdictional deposition if necessary." Dkt. # 13, at 12. This conditional and vague request is procedurally insufficient to justify discovery.

More fundamentally, Mogan has not made "a prima facie showing with some competent evidence demonstrating that jurisdiction might exist in order to be entitled to jurisdictional discovery." *Rovanco Piping Sys., Inc. v. Perma-Pipe Int'l Holdings, Inc.*, 2022 WL 683690, at *4 (N.D. Ill. 2022). Instead, Mogan offers only speculation. He suggests that MNC's customers *could* be in any state and that related entities *may* engage in similar national business activities. These conjectural assertions—phrased in terms of possibility rather than probability—do not satisfy the threshold requirement for jurisdictional discovery. *See Marks*, 2017 WL 2985757, at *3.

Moreover, MNC has submitted unrebutted evidence that it is a California corporation, has no subscribers in Illinois, and does not conduct business in the state. Dkt. # 11-1, ¶¶ 2, 4. Mogan has not "go[ne] beyond the pleadings and submit[ted] affirmative evidence" to dispute these facts. *In re Hair Relaxer*, 702 F. Supp. 3d at 707. Accordingly, the Court accepts MNC's evidence as true. *Id.*

As discussed *supra*, Mogan's request for discovery regarding LAS and other purportedly related entities fails for three additional reasons. First, Mogan offers no evidence that these entities are affiliated with MNC or that their contacts should be imputed to MNC. Second, even assuming such a relationship existed, Mogan provides no evidence that these entities conduct business in Illinois. Third, even if Mogan could demonstrate some Illinois-based business activities, such activities would not satisfy

18

the "essentially at home" standard required for general jurisdiction. *See Goodyear*, 564 U.S. at 930 n.6. ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Mogan's request for jurisdictional discovery amounts to an impermissible "fishing expedition" in search of contacts that might support personal jurisdiction. *Sheehan*, 48 F.4th at 527. Accordingly, the Court denies the request.

### IV. Doe Defendants

Mogan lists unnamed defendants—Does 1 through 20—in the complaint, asserting that he is unaware of their identities but claiming they acted as agents or employees of MNC. Beyond this vague and conclusory allegation, the complaint offers no factual basis distinguishing the Doe Defendants from MNC. Moreover, the remainder of the pleading, including the caption, refers to only a single defendant in the singular.

As the Seventh Circuit explained, "the use of fictitious names is disfavored," and the courts have "an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Roe v. Dettelbach*, 59 F.4th 255, 259–60 (7th Cir. 2023) (internal quotations omitted) (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997).

Although *sua sponte* dismissal of claims for lack of personal jurisdiction is generally disfavored, district courts retain discretion to depart from that principle.

*Flava Works, Inc. v. Does*, 2014 WL 222722, at *4 (N.D. Ill. 2014) (collecting cases). In this case, the Court exercises its discretion to dismiss the Doe Defendants for lack of personal jurisdiction, as they appear to be indistinguishable from MNC and are not alleged to have engaged in any independent suit-related conduct. *See*, *e.g.*, *Sun v. Asher*, 1992 WL 205671, at *4 (7th Cir. 1992) (affirming *sua sponte* dismissal where the district court had previously dismissed a similar claim on the same basis); *Millenium TGA v. Doe*, 2011 WL 7444064, at *1–3 (N.D. Ill. 2011) (dismissing Doe defendant associated with an IP address located outside Illinois after severing other defendants).

Furthermore, Doe defendants are generally disallowed in federal diversity actions. *See Holz v. Terre Haute Reg'l Hosp.*, 123 F. App'x 712, 713–14 (7th Cir. 2005) ("[B]y naming Nurse Doe as a defendant, [the plaintiff] defeated diversity jurisdiction because 'the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship.'" (quoting *Howell v. Trib. Ent. Co.*, 106 F.3d 215, 218 (7th Cir. 1997))). Accordingly, the Court also lacks subject matter jurisdiction over the remaining Doe defendants.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Metropolitan News Company's motion to dismiss for lack of personal jurisdiction [8] and dismisses the case without prejudice to Plaintiff refiling in an appropriate forum. Civil case terminated.

It is so ordered.

20

Dated: 11/12/2025

Charles P. Kocoras
United States District Judge